UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

MAURICE SYMONETTE

      Debtor.

_____/

CASE NO.:  18-15891-LMI

CHAPTER: 7

### EMERGENCY HEARING REQUESTED

HSBC BANK USA, N.A. AS TRUSTEE FOR NOMURA HOME EQUITY LOAN, INC.,
ASSETBACKED CERTIFICATES, SERIES2007-1's ("HSBC") SUPPLEMENTAL MOTION
FOR ANNULMENT OF THE AUTOMATIC STAY
*NUNC PRO TUNC* TO MAY 15, 2018; OR IN THE ALTERNATIVE, A DETERMINATION
THAT THE AUTOMATIC STAY DID NOT APPLY TO HSBC IN RELATION TO AN
EVICTION ACTION ON REAL PROPERTY LOCATED AT 10290 SW 58th St., MIAMI, FL
33173

*(Supplemented to include reference to 1) Bankruptcy Case No. 13-39018-RAM [In re Mack
Wells], 2) reason for emergency hearing, and 3) request for dismissal of the instant Chapter 7
petition as a result of Debtor's bad faith)*

*<u>Reason for emergency</u>: Upon information and belief, the property subject to this Motion has been
broken into on multiple occasions. The Court has continued the hearing on HSBC's Motion to
August 8, 2018 at 2:00pm (originally scheduled for July 25, 2018). Per Local Rule 9075-1,
emergency hearings shall be held only where direct, immediate and substantial harm will occur
to the interest of an entity in property.  HSBC avers that the Subject Property is at continual risk
of damage, and respectfully requests a hearing prior to the August 8, 2018.  The Debtor requested
(and was granted) a continuance in order to travel for a scheduled event in Arizona.  As such,
HSBC requests the hearing be held on July 31, 2018.*

COMES NOW **HSBC BANK USA, N.A. AS TRUSTEE FOR NOMURA HOME
EQUITY LOAN, INC., ASSETBACKED CERTIFICATES, SERIES 2007-1** (hereinafter
referred to as "HSBC") by and through its undersigned counsel, files this motion for annulment of
the automatic stay *nunc pro tunc* to May 15, 2018, pursuant to 11 U.S.C. §362(d); or in the
alternative,  an order deeming that the automatic stay inapplicable to HSBC in relation to an
eviction action (including any and all loss to the Debtor's personal property that *may* or *may not*
have been realized).  In support, HSBC respectfully states the following:

*Introduction*:

On June 7, 2018, Maurice Symonette (the "Debtor") filed his *Emergency Motion for Violation of Automatic Stay* [DE #20] (the "Emergency Motion") in relation to an eviction that occurred on May 14, 2018 at real property located at 10290 SW 58th St., Miami, FL (hereinafter the "Subject Property"). The Debtor does not possess a legal or equitable right to the Subject Property. Consequently, it is HSBC's position that any possession enjoyed by the Debtor in relation to the Subject Property was (and is) unlawful, and the Debtor has no property interest that the automatic stay of 11 U.S.C.S §362 could protect. The Court has set a Final Evidentiary Hearing on the Debtor's Emergency Motion on August 8, 2018. Through this Motion; HSBC respectfully requests that this Court enter an order determining that 1) the Debtor's bankruptcy petition was filed for the sole purpose to obstruct HSBC's legal eviction proceeding, 2) that the Debtor had neither a legal nor an equitable interest in the Subject Property, and 3) that the Debtor cannot use the Bankruptcy Code and the automatic stay provisions in an attempt to recover possession of the Subject Property and realize any damages as a result of HSBC's attempt(s) to remove the Debtor from the Subject Property.

*Factual Background*:

1.      The Debtor filed the instant bankruptcy on May 16, 2018.

2.      On **February 8, 2008** (over 10 years ago), a Final Judgment of Foreclosure was entered in HSBC's favor in relation to the "Subject Property." A true and correct copy of the Foreclosure Judgment is attached hereto as Movant's Exhibit "**A**."

3.      HSBC is the record title owner of the Subject Property. Attached as HSBC's Composite Exhibit "B," please find true and correct copies of the *Certificate of Sale (the "COS")* (dated February 18, 2015) and *Certificate of Title (the "COT")* (dated October 29, 2015).

4.      *The Debtor has no interest in Subject Property*. Pursuant to Section 45.0315 of the Florida Statutes; the right of redemption passed when the COS was issued on February 18, 2015; and as a result, neither this Debtor (Maurice Symonette) nor past debtors (Clide Ward/Kurt Marin) have any legal interest in the Subject Property.

5.      Furthermore; HSBC avers that the right of redemption was never even applicable to this particular debtor as Maurice Symonette never, at any point, had colorable title to the Subject Property. The only record of the Debtor's "interest" in the Subject Property is a <u>disqualified</u> deed

recorded on November 16, 2015 (*after* both HSBC's COS and COT).  Please find a true and correct copy of the <u>disqualified</u> deed– attached hereto as HSBC's Exhibit "**C**."

6.        On June 7, 2018; Debtor filed the Emergency Motion, and in such Motion, the Debtor alleges that HSBC and the Dade County Sheriff Department violated the bankruptcy stay by trying to evict the Debtor.[1]

7.        HSBC declares that, based on the following, the Debtor should not be able to use a bankruptcy stay to protect personal items stored at a location that the Debtor was unlawfully possessing as a trespasser.

<u>*Annulment of the Automatic Stay is appropriate*</u>

8.        In the context of the automatic stay in bankruptcy, the discretion that is afforded a bankruptcy judge to grant relief from the automatic stay includes the authority to grant an annulment of the stay, thereby validating an act done in violation of the stay which would otherwise be deemed to be void ab initio. <u>Blaylock v. Phila. Hous. Auth</u>., 301 B.R. 443, 445 (2003 Bankr. LEXIS 1586).

9.        The factors which; if present, will warrant annulling the stay include: (1) whether the creditor has knowledge of the debtor's bankruptcy filing; (2) whether the debtor is guilty of some inequitable conduct, such as abusive and/or repetitive bankruptcy filings; (3) whether the debtor has encouraged the creditor to proceed notwithstanding the stay or only asserts the stay when it is unsuccessful in the outcome of an action it allowed to proceed; and (4) whether the expenses of beginning anew with its enforcement remedy outweigh the benefit to anyone. None of these factors are dispositive alone, but require a weighing of the equities since the remedy is equitable in nature. <u>Id</u>.

10.      Maurice Symonette; along with a number of other individuals, have been playing an active role in obstructing HSBC's ownership rights as to the Subject Property for over ten (10) years. As stated, the Debtor does not have (and has never had) any colorable interest in the Subject Property – yet (between the Debtor and individuals the Debtor is connected to) **nine separate bankruptcies**[2] have been filed since the foreclosure judgment – most recently the instant bankruptcy petition filed the day of the HSBC's eviction.

---

[1] Upon review of the docket, the Debtor's primary address is 14100 NW 14th Ave., Miami, FL 33167 – *not* the Subject Property
[2] 10-12697-RAM filed 02/10/2010; dismissed 05/05/2010 (Kurt Marin)
10-45600-LMI filed 11/19/2010: dismissed 07/14/2011 (Kurt Marin);

11. The Court in *Blaylock* was confronted with a similar Debtor and ultimately found that the debtor could not use the Bankruptcy Code and the automatic stay provisions in an attempt to recover possession of the premises and damages" and that "[a] **Chapter 7 case offered no right to a debtor to remain in property for which she had neither a legal nor an equitable interest. The bankruptcy petition was filed for the sole purpose to obstruct the creditor's legal eviction proceedings**." (Emphasis added) Id. at 445.

12. Ultimately; the *Blaylock* Court concluded that the Chapter 7 case was filed solely to invoke the automatic stay to prevent an eviction, when the Debtor had no lawful interest to remain in the premises. Id. The *Blaylock* Court determined that such conduct would not be sanctioned by further obstruction in the form of an order invalidating the housing authority's eviction and requiring the housing authority to reinstate the Debtor into the Premises to which she has no claim of entitlement, only to evict her again. Id. Such an outcome would not only reward Debtor for her inequitable conduct and impose a financial and administrative burden on the housing authority, but would lead to an absurd result. Id.

13. In the instant case; the Debtor, Maurice Symonette, has no legal or equitable interest in the Subject Property. The Debtor never contracted with HSBC at any point, and was legally notified to leave the Subject Property. Attached as HSBC's Exhibit "**D**" is a true and correct copy of the *Termination Notice* sent to the "Unknown Occupants" on November 16, 2015.

14. Like the Debtor in *Blaylock,* Symonette has been deemed an individual with no legal or equitable right to the Subject Property; and should not be afforded the protections of the bankruptcy court to obstruct the rights of HSBC in relation to a property that Mr. Symonette has no rights to.

15. *Debtor is not at tenant.* This Court has recently addressed the issue of an eviction/writ of possession in In re PetitUSA, 2016 (Bankr. Lexis 4570). In *PetitUSA*, the Court stated that under Florida law, loss of possession does not necessarily terminate a tenant's leasehold interest and even termination, **if due solely to the non-payment of rent, can be reversed**

---

12-10066-LMI filed 01/03/2012; dismissed 01/31/2013 (Kurt Marin);
12-23756-LMI filed 06/04/2012; dismissed 01/11/2013 (Maurice Symonette);
15-28143-JKO filed 10/13/2015; dismissed 02/05/2016 (Maurice Symontte);
16-13958-AJC filed 03/21/2016; dismissed 05/06/2016 (Kurt Marin) ;
16-20959-EPK filed 08/08/2016; dismissed 07/11/2017 (Maurice Symonette);
18-15121-EPK filed 04/30/2018; dismissed 05/14/2018 (Maurice Symonette, Kurt Marin, and Clide Ward)
18-15891-LMI filed 05-16/2018 (the instant case)

(Emphasis added). Id. at 10. The Court found that the forfeiture of the Debtor's leasehold was based on non-payment of rent (a monetary default), and not solely in relation to an alleged *non*-monetary default. PetitUSA at 10.

16. The *PetitUSA* Debtor clearly had a possessory interest in the collateral – which was formalized with a landlord/tenant lease agreement.

17. The Debtor *here* is distinguishable from the *PetitUSA* Debtor (or any Debtor with a true a landlord/tenant relationship). As stated; the Debtor in the instant case has no legal or equitable interest in the Subject Property (including no rights as a tenant under Florida law). The Debtor is tantamount to a trespasser on the Subject Property; and, like the *Blaylock* Court, this Court should determine that the Debtor should not be permitted to use the stay unfairly as a shield to escape the unfavorable consequences of [his] own duplicitous conduct. Blaylock at 12. Consequently, the Debtor's assertions of damaged items should be disqualified as without merit because such items were stored at a location that the Debtor was occupying unlawfully.

18. *Debtor's Chapter 7 was filed solely to stop eviction.* HSBC avers that this case was filed for the sole reason to (again) stop HSBC's eviction. Upon review of the Debtor's Schedules, the Debtor lists **no unsecured creditors** on Schedule E/F. As this is a Chapter 7 case, it is clear that the Debtor has no intention to utilize this court for a Chapter 7's intended purpose – to obtain a discharge of unsecured debt.

19. *Eviction proceeded in accordance with Florida Law.* Pursuant to Section 83.62 (2) of Florida Statutes, "at the time the sheriff executes the writ of possession or at any time thereafter, the landlord or the landlord's agent may remove personal property found on the premises to or near the property line" and "neither the sheriff nor the landlord's agent shall be liable to the tenant or any other party for the loss, destruction, or damage to the property after it has been removed." Assuming; *arguendo*, that any of the Debtor's items were impacted in any way during the course of the eviction – the Sheriff was acting in accordance with Florida law and neither the Sheriff nor HSBC should be liable for any damages that may or may not have occurred to the Debtor's property.

*In Re Mack Wells (Bankruptcy Case No. 13-39018-RAM)[3]*

20.    Upon further research and preparation for the hearing on the instant Motion, as well as the hearing on Debtor's Emergency Motion; HSBC supplements this pleading to include Judge Mark's analysis in the Mack Wells Bankruptcy (BK Case No. 13-39018-RAM), and discuss the similarities between *that* case and Mr. Symonette's *current* bankruptcy case.

21.    In the Mack Wells case, the Court conducted a hearing on an Emergency Motion for Sanctions (nearly identical to the pleading filed by Mr. Symonette in this bankruptcy); wherein Mr. Wells argued that he was evicted from "his home" located at 14100 NW 14th Avenue, Miami, FL (the "Mack House").  Ultimately, the Court determined that Mack Wells **should obtain no relief on the alleged stay violation, den[ied] the Motion for Sanctions, and set a hearing requiring the Debtor to appear and show cause why this case should not be dismissed with prejudice**. 13-39018-RAM (In re Mack Wells).

22.    Similar to the Subject Property in the instant case, the Mack House was not owned by Mack Wells.  Instead; the court identified that public records showed that Mack Wells obtained an "interest" in the Mack House by way of a Quit Claim deed that was not recorded until **February 27, 2014** – years after Deutsche Bank was issued a Certificate of Title on **December 1, 2011**.  Id.

23.    Judge Mark found that:

> **"whatever interest the Debtor claimed in the [Mack House] by virtue of the Quit Claim Deed was extinguished by the completion of the foreclosure sale and the issuance of title to Deutsche Bank in late 2011," and "without question, the Debtor knew that he no longer owned the [Mack House] since he filed the bankruptcy case to stop the issuance of a Writ of Possession sought by the title owner."** Id.

24.    The factual circumstances of the Mack Wells case are identical to the factual circumstances in the instant case. This court should enter an order articulating the same "inescapable conclusion" reached by Judge Mark – Mr. Symonette has abused the bankruptcy process and, along with others, has caused substantial delay and cost to HSBC.  Judge Mark found that Mack Wells, along with others, filed numerous petitions to stop the foreclosure or try to stop a lawful eviction by the bank.

---

[3] A true and correct copies of the *Amended Order Denying Motion for Sanctions and Order to Show Cause* (the "Mack Wells Order") is attached hereto as HSBC's Exhibit "E."

25.     In addition to denying the Debtor's Motion for Sanctions, the Court deemed it appropriate to set a hearing for the Debtor to show cause why the case should not be dismissed with prejudice for two years – which ultimately occurred on September 14, 2014.

26.     Finally; and perhaps not so coincidentally, the referenced Quit Claim Deed to Mack Wells also included this Debtor, Maurice Symonette. A true and correct copy of the Mack Wells/Maurice Symonette is included as an Exhibit to the Mack Wells Order. The address of the Mack House (**14100 NW 14th Avenue, Miami, FL**) is the address the Debtor lists as his primary residence, as reflected on the docket.  As such, this provides further evidence that a rather intricate and long lasting scheme to hinder and delay title owners from removing unauthorized individuals from multiple properties is still underway and thriving.

27.     As stated, this Debtor has no colorable title in relation to the Subject Property, and inclusion of this property on the Debtor's schedules is a false representation.  The Debtor is not a bona fide tenant or owner of the Subject property.   Any possession of the Subject Property by this Debtor is unauthorized, and trespassing.

28.     Just like the Mack Wells case, this court should deny the Debtor's Emergency Motion for Sanctions <u>with</u> prejudice.

*Emergency Hearing Requested*

29.     <u>Request for Emergency Hearing</u>. Upon information and belief, the Subject Property has been broken into on multiple occasions since the filing of the Debtor's petition.

30.     Most recently; upon information and belief, on July 21, 2018, the Subject Property was broken into *again* (presumably at the direction of the Debtor).

**<u>Conclusion</u>**

Maurice Symonette is an individual with no legal or equitable right to HSBC's Property, and it is HSBC's position that any possession by Mr. Symonette in relation to the Subject Property was (and is) unlawful, and the Debtor has no property interest that the automatic stay of 11 U.S.C.S §362 could protect.  Notwithstanding the Debtor's lack of colorable title; the Debtor has used this Court (on multiple occasions) to obstruct HSBC's eviction proceedings.  Like the Court in *Blaylock*, this Court should determine that the Debtor's Chapter 7 case affords no right to a debtor to remain in property for which he had neither a legal nor an equitable interest. <u>Blaylock</u> at 17. Finally, as articulated above, this court has dealt with the identical set of factual circumstances. This court should follow Judge Mark's Mack Wells ruling and find that Mr. Symonette "*should*

*obtain no relief on the alleged stay violation and deny the Motion for Sanctions."* Deeming the stay annulled (and dismissing this case for bad faith) would be the most equitable/appropriate result given that the Debtor is alleging damages to personal property that was located on property where the Debtor had no legal right to be; *and* given that this Court has confronted this exact same issue in case that the Debtor clearly had some sort of involvement with.

WHEREFORE, **HSBC Bank USA, National Association as Trustee for Nomura Home Equity Loan, Inc., AssetBacked Certificates, Series 2007-1,** respectfully requests that this Court enter an Order stating the following:

a) That the Debtor's Chapter 7 petition was filed for the sole purpose to obstruct HSBC's eviction;

b) That the Debtor has neither a legal, nor an equitable interest in the Subject Property;

c) That the Debtor has no colorable title in the Subject Property;

d) That the automatic stay is annulled to May 15, 2018 (thus, affirmatively legitimatizing HSBC's eviction); or in the alternative, no stay was in place at the time of the eviction because the Debtor is a trespasser on HSBC's property;

e) That by entry of an order granting this Motion; the Debtor's Emergency Motion should be denied as moot, and with prejudice; and

f) Dismissing the case with prejudice on the grounds of a bad faith filing.

Jeffrey S. Fraser, Esq.
**Albertelli Law**
Attorney for Secured Creditor
PO Box 23028
Tampa, FL 33623
Telephone: (813) 221-4743
Facsimile: (813) 221-9171

By: */s/ Jeffrey S. Fraser, Esq.*
JEFFREY S. FRASER, ESQ.
Florida Bar No: 0085894

<u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY that a true and correct copy of the foregoing was provided via electronic and/or regular U.S. Mail to the parties on the attached service list, this 23rd day of July 2018, I served a copy of the foregoing upon:

**<u>SERVICE LIST</u>**
Maurice Symonette
14100 NW 14 AVE
Miami, FL 33167

Joel L. Tabas
25 SE 2nd Avenue
Suite 248
Miami, FL 33131

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

                       Jeffrey S. Fraser, Esq.
                       **Albertelli Law**
                       Attorney for Secured Creditor
                       PO Box 23028
                       Tampa, FL 33623
                       Telephone: (813) 221-4743
                       Facsimile: (813) 221-9171

                       By: <u>*/s/ Jeffrey Fraser, Esq.*</u>
                       JEFFREY S. FRASER, ESQ.
                       Florida Bar No: 0085894

# EXHIBIT A

2
28
08

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY,
FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO: 07-23509 CA 23

HSBC BANK USA, NATIONAL ASSOCIATION, AS
TRUSTEE FOR THE HOLDERS OF NOMURA HOME
EQUITY LOAN, INC., HOME EQUITY LOAN TRUST,
SERIES 2007-1,

      Plaintiff,

vs.

KURT MARIN; UNKNOWN SPOUSE OF KURT MARIN IF
ANY; ANY AND ALL UNKNOWN PARTIES CLAIMING
BY, THROUGH, UNDER, AND AGAINST THE HEREIN
NAMED INDIVIDUAL DEFENDANT(S) WHO ARE NOT
KNOWN TO BE DEAD OR ALIVE , WHETHER SAID
UNKNOWN PARTIES MAY CLAIM AN INTEREST AS
SPOUSES, HEIRS, DEVISEES, GRANTEES OR OTHER
CLAIMANTS; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.; CITY OF NORTH
MIAMI BEACH, FLORIDA; JOHN DOE AND JANE DOE
AS UNKNOWN TENANTS IN POSSESSION.,

      Defendants



## FINAL JUDGMENT OF FORECLOSURE
(Pursuant to Administrative Order No. 06-02 A1)

03

    THIS ACTION was heard before the Court on Plaintiffs Motion for Summary

Final Judgment on January 23, 2008. On the evidence presented IT IS ADJUDGED that:

    1.     The Plaintiffs Motion for Summary Judgment is GRANTED.  Service of process been duly and

regularly obtained over KURT MARIN; UNKNOWN SPOUSE OF KURT MARIN IF ANY; MORTGAGE

ELECTRONIC REGISTRATION SYSTEMS, INC., defendants.

    2.     There is due and owing to the Plaintiff the following:

| | |
|---|---:|
| Principal due on the note secured by the mortgage foreclosed | $1,155,000.00 |
| Interest on the note and mortgage from January 1, 2007 to January 23, 2008 | $107,430.49 |
| Title Search Expenses: | $400.00 |
| **Lates Charges (Pre-Acceleration)** | **$1,263.27** |
| **Inspections Conducted on Property** | **$45.00** |
| Appraisal(s) | $95.00 |
| Court Costs: | |
|     Filing fee | $258.00 |
|     Service of Process at $45.00 per address | $1,195.00 |
|     Publication of Notice of Action for Kurt Marin and Unknown Spouse of Kurt Marin | $45.00 |
| SUBTOTAL | $1,265,731.76 |

Additional Costs

Service/Mail Required by Law

Recording Fee (lis pendens)

$16.50

$10.50

SUBTOTAL    $1,265,758.76

Attorney fees based upon 9 hours at $150.00 per hour

Less: Undisbursed escrow funds

Less: Unearned insurance premiums

$1,350.00

($9,683.25)

GRAND TOTAL:    $1,257,425.51

3.    The grand total amount referenced in Paragraph 2 shall bear interest from this date forward at the prevailing legal rate of interest.

4.    Plaintiff, whose address is 3476 STATEVIEW BLVD., FT. MILL, SC 29715, holds a lien for the grand total sum specified in Paragraph 2 herein. The lien of the plaintiff is superior in dignity to any right, title, interest or claim of the defendants and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of the defendants, with the exception of any assessments that are superior pursuant to Florida Statutes, Section 718.116. The plaintiffs lien encumbers the subject property located in Miami-Dade County, Florida and described as:

**MILLER DRIVE ESTATES, PB 46-37, LOT IRREGULAR, BLOCK, N1/2 OF W1/2 OF TR 23 OF PUBLIC RECORD, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.**

Property Address: 10290 S.W. 58TH STREET, MIAMI, FL 33173

5.    If the grand total amount with interest at the rate-described in Paragraph 3 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on February 28 , 2008, **a date that shall not be less than 20 days or more than 35 days after the date of entry of this judgment**, at 11:00 a.m. to the highest bidder for cash, except as prescribed in Paragraph 6, at Room 908, 140 West Flagler Street, Miami, Florida after having first given notice as required by Section 45.031, Florida Statutes. The Clerk shall not conduct the sale in the absence of the Plaintiff or its representative.

6.    Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if Plaintiff is not the purchaser of the property for sale. If Plaintiff is the purchaser, the Clerk shall credit Plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is

2



necessary to pay the bid in full.  The Clerk shall receive the service charge imposed in section 45.0931, Florida

Statutes, for services in making, recording, and certifying the sale and title that shall be assessed as costs.

       7.      On filing of the Certificate of Sale, Defendant's right of redemption as proscribed by Florida

Statutes, Section 45.0315 shall be terminated.

       8.      On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they

are sufficient, by paying: first, all of the plaintiff' costs; second, documentary stamps affixed to the Certificate; third,

plaintiff's attorneys' fees; fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate

prescribed in Paragraph 2 from this date to the date of the sale.  During the sixty (60) days after the Clerk issues the

certificate of disbursements, the Clerk shall hold the surplus pending further Order of this Court.

       9.      On filing of the Certificate of Title, Defendant and all persons claiming under or against defendant

since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property and the

purchaser at sale shall be let into possession of the property.

      10.      The Court finds, based upon the affidavits presented and upon inquiry of counsel for the Plaintiff,

that 9 hours were reasonably expended by plaintiffs counsel and that an hourly rate of $150.00 is appropriate.

PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED IT'S

CONTRACT FEE WITH THE PLAINTIFF.  The Court finds that there are no reduction or enhancement factors for

consideration by the Court pursuant to Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).

      11.     **NOTICE PURSUANT TO FLORIDA STATUTES § 45.031**
**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY  FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.**

**IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE.  IF YOU FAIL TO FILE A CLAIM YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.**

**IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF.  YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED.  PLEASE CHECK WITH THE CLERK OF THE COURT FOR MIAMI-DADE COUNTY, TELEPHONE NUMBER 305-375-5943, 73 WEST FLAGLER STREET, MIAMI, FLORIDA, WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.**

**IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT**

3

**YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT LEGAL SERVICES OF GREATER MIAMI, INC., 305-576-0080, TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT LEGAL SERVICES OF GREATER MIAMI, INC. FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.**

The Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments.

ORDERED at Miami, Florida, on _____January 23___, 2008.

Victoria S. Sigler, Circuit Judge

Copies furnished to:
LAW OFFICES OF DAVID J. STERN, P.A.

KURT MARIN
UNKNOWN SPOUSE OF KURT MARIN
10290 S.W. 58TH STREET
MIAMI, FL 33173

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
C/O CRIS MULLINS, CORPORATE COUNSEL
1595 SPRING HILL ROAD, STE 310
VIENNA, VA 22182

UNKNOWN TENANTS
10290 S.W. 58TH STREET
MIAMI, FL 33173

07-91074 ( ASCF )

4

# EXHIBIT B

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

HSBC BANK USA (NA) TR
Plaintiff(s) / Petitioner(s)

 VS.

MARIN, KURT , et al.
Defendant(s) / Respondents(s)

GENERAL JURISDICTION DIVISION

Case No:        07023509CA01

Section:        23

### CERTIFICATE OF SALE

**The undersigned clerk** of the court certifies that notice of public sale of the property described in the Order or Final Judgment was published in The Daily Business Review, a newspaper circulated in Miami-Dade County, Florida, in the manner shown by the proof of publication attached, and on  February 18, 2015 , the property was offered for public sale to the highest and best bidder for cash. The highest and best bid received for the property in the amount of  $635,600.00  was submitted by:

Plaintiff

to whom the property was sold. Having received no money, the amount bid was credited to plaintiff in accordance with the order or final judgment or law.

WITNESS my hand and the seal of this court on  February 23, 2015 .

Harvey Ruvin, Clerk of Courts
Miami-Dade County, Florida

Chontell Boston-Gammons

2015 FEB 23  PM 3: 02

Rev. 10/5/2009                                    1

**Certificate of Service**

**The Undersigned Clerk** of the court certifies that a copy of hereof of the Certificate of Sale for Civil Case No. 07023509CA01 was mailed on <u>02/23/2015</u> to:

KURT MARIN
UNKNOWN SPOUSE OF KURT MARIN
10290 S.W. 58TH STREET
MIAMI, FL 33173

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
C/O CRIS MULLINS, CORPORATE COUNSEL
1595 SPRING HILL ROAD, STE 310
VIENNA, VA 22182

UNKNOWN TENANTS
10290 S.W. 58TH STREET
MIAMI, FL 33173

WITNESS my hand and the seal of this court on <u>February 23, 2015</u>.

Harvey Ruvin, Clerk of Courts
Miami-Dade County, Florida

2

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CFN 2015R0694566
OR BK 29834 Pg 2777 (1Pgs)
RECORDED 10/29/2015 16:00:37
DEED DOC TAX $3,813.60
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

HSBC BANK USA (NA) TR
Plaintiff(s) / Petitioner(s)

VS.

MARIN, KURT , et al.
Defendant(s) / Respondents(s)

GENERAL JURISDICTION DIVISION

| | |
|---|---|
| Case No: | 07023509CA01 |
| Section: | 23 |
| Doc Stamps: | $3,813.60 |
| Surtax: | $0.00 |
| Consideration: | $635,600.00 |

## CERTIFICATE OF TITLE

The undersigned clerk of the court certifies that a Certificate of Sale was executed and filed in this action on February 23, 2015, for the property described herein and that no objections to the sale have been filed within the time allowed for filing objections.

The following property in Miami-Dade County, Florida:

MILLER DRIVE ESTATES, PB 46-37, LOT IRREGULAR, BLOCK, N1/2 OF W1/2 OF TR 23 OF PUBLIC RECORD, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Property Address: 10290 S.W. 58TH STREET, MIAMI, FL 33173

was sold to:

HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR NOMURA HOME EQUITY LOAN, INC., ASSETBACKED CERTIFICATES, SERIES 2007-1

C/O Wells Fargo Home Mortgage

3476 Stateview Blvd.

Fort Mill, SC, 29715

WITNESS my hand and the seal of this court on October 27, 2015.

Harvey Ruvin

Harvey Ruvin, Clerk of Courts
Miami-Dade County, Florida

FILED FOR
2015 OCT 27  PM 1: 28
CLERK CIRCUIT C.C.
DADE CIRCUIT CIVIL

Rev. 10/5/2009

1

# EXHIBIT C



CFN 2015R0730682
OR BK 29855 Pgs 3078-3079 (2Pgs)
RECORDED 11/16/2015 15:58:15
DEED DOC TAX $0.60
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

When recorded return to: _____

# Quitclaim Deed:

THIS QUITCLAIM DEED, executed this __30__ day of __January__ , 20_08_ .

by first party, Grantor, __Kurt Marin + Ferris Rhodes+__

whose post office address is _10290  S.W. 58 St  Miami Fl. 33123_

to second party, Grantee, __Kurt Marin + Clyde A. Ward + Maurice Symonette__

whose post office address is _10290  SW  58+ St  Miami  Fl. 33173_

WITNESSETH, That the said first party, for good consideration and for the sum of _____

_____ _Ten_ Dollars ($ _10.00_ )

paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second party forever, all the right, title, interest and claim which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of _Miami  Dade_ ,

State of _Florida_ to wit: _Legal Description_

_2954  40  1.15  AC  miller  drive  Estates  PB_

_46-37  N½  OF  W½  OF  TR 23 Lot  Size_

_Irregular  OR  17348 - 3388  0996 L  COC  25872-3680_

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

www.socrates.com

© 2004, Socrates Media, LLC
LF298WA • Rev. 04/04

OR BK 29855 PG 3079
LAST PAGE

Assessor's Property Tax Parcel/Account Number(s): _____

**IN WITNESS WHEREOF,** The said first party has signed and sealed these presents the day and year first above written. Signed, sealed and delivered In presence of:

Signature of Witness: _Mack L. Wells_

Printed Name of Witness: _Mack L. Wells_

Signature of First Party: _Kurt Marin_       _Ferris Rhodes_

Printed Name of First Party: _Kurt Marin,   Ferris Rhodes_

Address of Witness: _15020 S. River dr. Miami Fla 33167_

2nd witness: Clyde McPhatter  3320 NE 165st Miami Fl. 33110
Signed: Clyde McPhatter.

Prepard by:
James Buckman
1977 NE 119th Rd
Miami Fl. 33181

State of _Florida_
County of _Miami Dade_ } SS.

I certify that I know or have satisfactory evidence that _Kurt Marin and Ferris Rhodes_ (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as _____
(officer, trustee, etc.) of _____ (name of party on behalf of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _1-30-2008_       Signature: _Fannie Mitchell_

(Seal or Stamp)       Title: _____

My appointment expires: _____

www.socrates.com

© 2004, Socrates Media, LLC
LF298WA • Rev. 04/04

## SALES INFORMATION ⓘ

| Previous Sale | Price | OR Book-Page | Qualification Description | Previous Owner 1 | Previous Owner 2 |
|---|---|---|---|---|---|
| 10/27/2015 | $635,600 | 29834-2777 | Financial inst or "In Lieu of Forclosure" stated | FERRIS RHODES | KURT MARIN |
| 01/30/2008 | $100 | 29855-3078 | Sales which are disqualified as a result of examination of the deed | KURT MARIN | FERRIS RHODES |
| 12/01/2007 | $100 | 28016-1225 | Sales which are disqualified as a result of examination of the deed | KURT MARIN | |
| 08/01/2007 | $0 | 25872-3680 | Sales which are disqualified as a result of examination of the deed | | |
| 08/01/2006 | $1,600,000 | 25241-0477 | Sales which are qualified | | |
| 05/01/2003 | $675,000 | 21398-1383 | Other disqualified | | |
| 09/01/1996 | $350,000 | 17348-3388 | Sales which are qualified | | |
| 01/01/1988 | $415,000 | 13551-0603 | Sales which are qualified | | |
| 05/01/1979 | $33,500 | 10390-2071 | Sales which are qualified | | |
| 07/01/1978 | $35,000 | 10094-1707 | Sales which are qualified | | |
| 09/01/1975 | $26,000 | 00000-00000 | Sales which are qualified | | |

For more information about the Department of Revenue's Sales Qualification Codes.

# EXHIBIT D

# KASS|SHULER

### LAW FIRM

(813) 229-0900 x5250 | Fax (813) 384-2636
1505 N Florida Avenue | Tampa, Florida 33602-2613
Mailing Address: P.O. Box 800 | Tampa, Florida 33601-0800
cdiehl@kasslaw.com | www.kasslaw.com

November 16, 2015

Kathleen Archilla
Lindsay M. Alvarez
David C. Baldor
Peter Saker
Sim M. Bradford
Ke-Sheng "Kirk" Chen
Philip K. Clarke
Matthew I. Ficker
Larry M. Foyle
William J. Gardner
Melissa A. Giasi
Donna S. Glick
Yusuf Hashemaola
Brad W. Hissing
Clay A. Holsinger
Matthew M. Holsinger
Gail Gorman Holtzman
Michael Kass
Christopher C. Lindhardt
Ian J. MacAlister

Robert L. McDonald, Jr.
Richard S. McInzie
Jeffrey J. Mauch
Nicole Marissa Neel
Laura E. Noyes
Edward R. Pritchard
Melissa R. Rinaldo
Nicholas J. Roefaro
Elizabeth M. Ryan
Stacey Ann Saint-Hubert
Jennifer M. Scott
James M. Shuler
Ashley L. Simon
Larry E. Sulewman (1948-2001)
Neil C. Spector
Henry A. Stein (1948-2011)
Ronald H. Trybus
Jane W. Wadler
Alicia R. Whiting-Bozich
George S. Zamora

**REGULAR AND**
**CERTIFIED U.S. MAIL**

UNKNOWN TENANT(S)/OCCUPANT(S)
10290 SW 58TH ST
MIAMI, FL 33173

RE: NOTICE OF TERMINATION OF TENANCY AND DEMAND FOR
POSSESSION OF PROPERTY

Dear Occupant:

On , the Premises located at 10290 SW 58TH ST, MIAMI, FL 33173 (the "Premises")was
sold at a foreclosure sale pursuant to a Final Judgment in accordance with Florida law. Our client,
HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR NOMURA HOME
EQUITY LOAN, INC., ASSETBACKED CERTIFICATES, SRIES 2007-1,("CLIENT"), was the
highest bidder at the foreclosure sale and now owns or will soon own the Premises upon the issuance
of the certificate of title.

**If you are the former owner of the Premises, or the child, spouse, or parent of the**
**former owner**, we hereby demand possession of the Premises and this is a courtesy notice to vacate
the Premises within ten (10) days from the date of this letter.  If you do not immediately relinquish
possession, we will apply to the court for a Writ of Possession seeking to evict you from the
Premises.

**If you are a tenant in possession of the Premises pursuant to a rental agreement with**
**the former owner** that was the product of an arm's length transaction and for a rental amount this
is not substantially less than fair market value (unless the rent is reduced or subsidized due to a
federal, state, or local subsidy), you are hereby provided the following notice pursuant to section
83.561, Florida Statutes:

## NOTICE TO TENANT OF TERMINATION

You are hereby notified that your rental agreement is terminated on the date of delivery
of this notice, that your occupancy is terminated 30 days following the date of delivery of this
notice, and that our client demands possession of the Premises on 12/16/2015 If you do not
vacate the Premises by that date, we will ask the court for an order allowing our client to
remove you and your belongings from the Premises. You are obligated to pay rent during the
30-day period for any amount that might accrue during that period.  Your rent must be
delivered to: HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR NOMURA
HOME EQUITY LOAN, INC., ASSETBACKED CERTIFICATES, SRIES 2007-1, C/O
PREMIERE ASSET SERVICES,  8480 STAGECOACH CIRCLE, FREDERICK, MD
21701

(Please note the Premises address on any remittance).

**IMPORTANT NOTICE TO SERVICE MEMBERS AND THEIR DEPENDENTS:
PROTECTIONS UNDER THE SERVICE MEMBERS CIVIL RELIEF ACT**

Service members on "active duty" or "active service," or a dependent of such a service member may be entitled to certain legal protections, including eviction protection, pursuant to the Service members Civil Relief Act (50 USC App.§§ 501-596), as amended, (the "SCRA") and, possibly, certain related state statutes.

Who may be entitled to Legal Protections under the SCRA:

1. Active duty members of the Army, Navy, Air Force, Marine Corps, Coast Guard and active service National Guard;
2. Active service members of the commissioned corps of the National Oceanic and Atmospheric Administration;
3. Active service members of the commissioned corps of the Public Health Service;
4. United States citizens servicing with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; and
5. Their spouses.

Service members and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php. Military OneSource" is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA, please go to www.militaryonesource.com/scra or call 1-800-342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website. If you are such a service member, or a dependent of such a service member, please provide a legible copy of your current military orders as soon as possible by mail or email to evictionrequests@kasslaw.com, or by fax to 813-384-2636, attention Eviction Department.

In such case, you or your attorney should contact this law firm immediately to determine if you fall under the protection of the SCRA.

Yours Sincerely,

Jennifer M. Scott

1562422/309150/cdd

For additional information please contact:
Eviction Specialist: Cameron D. Diehl
(813) 229-0900 ext. 5250
evictionrequests@kasslaw.com
Fax to 813-384-2636

NOTICE OF APPEARANCE AND NOTICE OF FILING THE NOTICE OF
TERMINATION AND DEMAND FOR POSSESSION OF PROPERTY

COUNTY
2007-CA-023509
309150/1562422/cdd
Page 4

https://www2.miami-dadeclerk.com/ocs/ViewerHTML5.aspx?QS=B6%2f9EwnZlIiih%2bg...    1/9/2017

# EXHIBIT E

ORDERED in the Southern District of Florida on *August 19, 2014*



**Robert A. Mark, Judge**
**United States Bankruptcy Court**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| In re: | CASE NO. 13-39018-RAM |
|  | CHAPTER 7 |
| MACK WELLS |  |
| Debtor. |  |

## AMENDED ORDER DENYING MOTION FOR
## SANCTIONS AND ORDER TO SHOW CAUSE WHY CASE
## SHOULD NOT BE DISMISSED WITH A 2 YEAR PREJUDICE PERIOD[1]

The Court conducted a hearing on August 7, 2014, on an
Emergency Motion for Sanctions filed by the Debtor on February
20, 2014 ("Motion for Sanctions") [DE# 26].  The Debtor claims

---

[1] The Order is amended to include attachments inadvertently omitted from the
last Order.

that he was evicted from "his home" located at 14100 N.W. 14th
Avenue, Miami, Florida (the "14th Ave. Home") on February 14,
2014, after the filing of this bankruptcy case and without entry
of an order granting relief from the automatic stay. The Motion
for Sanctions was supplemented by the Debtor's Motion to
Reinstate Sanctions Against Bank for Wrongful Eviction While
Under Bankruptcy [DE #36].

After a series of hearings, on June 30, 2014 the Court
entered an Order Reserving Ruling on Motion for Sanctions,
Setting Deadlines, and Setting Further Hearing [DE #61] (the
"Order Reserving Ruling"). The Order Reserving Ruling set a
hearing for August 7, 2014 and required the Debtor to file a
copy of the police report from the alleged eviction, the name of
the moving company that participated in the alleged stay
violation, the name of the Miami-Dade County Sheriff that
executed the alleged eviction, and a list of the property lost
with its estimated value prior to the August 7th hearing. The
Debtor filed a copy a police report for a different incident
which took place on April 5, 2014 [DE #66] and a Notice of
Filing List of Receipts of Property Lost which contains receipts
for property sold to an entity called "Boss Group Ministries"
and another entity called "L & P Shipping Corp." [DE #68] (the

"Allegedly Lost Property"). Significantly, none of the Allegedly Lost Property is listed in the Debtor's schedule B [DE #47].

At the conclusion of the August 7th hearing, the Court announced that it would abstain from taking any further action on the Motion for Sanctions for several reasons, including the Debtor's failure to specifically identify the parties responsible for the eviction and the Debtor's history of filing five (5) prior bankruptcy cases. However, the Court announced on the record that it would enter an Order finding that the automatic stay was violated and that the Debtor could pursue relief in a non-bankruptcy forum.

Following the hearing, the Court has undertaken a review of the Debtor's five prior bankruptcy cases, a review of the state court docket in the state court foreclosure case of the 14th Ave. Home, Case No. 2007-23371-CA-01 (the "State Foreclosure Case"), a review of the publicly available title records on the 14th Ave. Home, and a review of the Allegedly Lost Property.

Based upon this review, and for the reasons stated below, this Court concludes that the Debtor filed this bankruptcy case in bad faith, that the Debtor has filed false schedules in this case and in a prior case, and that the Debtor has, in bad faith, filed five of his six bankruptcy cases to delay and hinder the mortgage holder's right to complete the State Foreclosure Case.

3

As a result, and notwithstanding any findings stated on the record at the August 7th hearing, or at prior hearings on the Motion for Sanctions, the Court is now persuaded that this Debtor should obtain no relief on the alleged stay violation and no relief in this bankruptcy case. Therefore, the Court is denying the Motion for Sanctions and setting a hearing requiring the Debtor to appear and show cause why this case should not be dismissed with prejudice for two years.

## Findings Supporting Dismissal
## of This Case as a Bad Faith Filing Pursuant to §707(b)(3)(A)

A.   The State Court Foreclosure Case was filed on July 25, 2007, by Deutsche Bank National Trust Company ("Deutsche Bank"). At that time, it appears that the 14th Ave. Home was owned by Leroy Williams.

B.   Following entry of a final judgment, the first scheduled sale of the 14th Ave. Home was cancelled by the filing of a bankruptcy case on November 9, 2007, by an individual named Ferris L. Rhodes, Case No. 07-19842-AJC.   The Schedule A filed by Rhodes stated that he was "renting" the 14th Ave. Home.

C.   The foreclosure sale was reset for April 7, 2010. That sale was cancelled by a bankruptcy case filed on March 26, 2010, by an individual named Christina Pierre, Case No. 10-17808.   It is unclear what interest, if any, she had in the 14th

4

Ave. Home, because she did not file schedules and her case was dismissed.

D.    It is also not clear whether Ms. Pierre or Mr. Rhodes are related to the Debtor in this case, but the fact that the foreclosure sale was stopped by these two bankruptcy filings is relevant to the history of the State Foreclosure Case and the Debtor's later actions.

E.    According to the public records, Leroy Williams, owner of the 14th Ave. Home, executed a Quit Claim Deed to Maurice Symonettte and the Debtor, Mack L. Wells, on January 20, 2009. The Deed was not recorded until February 27, 2014.  A copy of the Deed is attached as Exhibit "A".

F.    Based upon his purported ownership of the 14th Ave. Home, the Debtor, Mr. Wells, then became active in the State Foreclosure Case.

G.    After Ms. Pierre's bankruptcy case was dismissed on April 14, 2010, the foreclosure sale was rescheduled for October 15, 2010.    That sale was cancelled by the Debtor's bankruptcy petition filed on October 14th, a day before the sale, Case No. 10-41269.    That case, Mr. Wells' second bankruptcy filing,[2] was dismissed on November 16, 2010.

---

[2] Mr. Wells first bankruptcy case, Case No. 08-12277, was filed on February 28, 2008, and dismissed on March 18, 2008.  This filing appears to be unrelated to the 14th Ave. Home.

5

H.     The foreclosure sale was reset yet again for June 7, 2011 and, as further evidence of bad faith, Mr. Wells filed his third bankruptcy case on June 6, 2011, Case No. 11-25669, resulting in a cancellation of the sale.

I.     According to the docket in the State Foreclosure Case, the foreclosure sale was finally conducted on November 28, 2011. The public records reflect that Deutsche Bank was issued a Certificate of Title on December 1, 2011.   A copy of the Certificate is attached as Exhibit B.

J.     Based on the foregoing facts that are all in the public record, whatever interest the Debtor claimed in the 14th Ave. Home by virtue of the Quit Claim Deed was extinguished by the completion of the foreclosure sale and the issuance of title to Deutsche Bank in late 2011.

K.     The completion of the sale and the issuance of title did not end the Debtor's efforts to hinder and delay Deutsche Bank.   The Debtor filed his fourth bankruptcy case on February 13, 2012, Case No. 12-13445.   That case was dismissed on March 6, 2012.

L.     The Debtor apparently continued to live at the 14th Ave. Home, and not surprisingly, when Deutsche Bank filed a Motion for Issuance of a Writ of Possession on November 2, 2012, the Debtor filed his fifth bankruptcy case on December 18, 2012,

6

Case No. 12-40009. The bankruptcy petition was filed the same day that the Motion for Issuance of Writ of Possession was set for hearing in the State Foreclosure Case. The Debtor's Schedule A filed in Case No. 12-40009 [DE# 14, p. 3] falsely states that the Debtor is the "100%" owner of the 14th Ave. Home. This statement was knowingly false. Without question, the Debtor knew that he no longer owned the 14th Ave. Home, since he filed the bankruptcy case to stop issuance of a Writ of Possession sought by the title owner, Deutsche Bank. The Debtor's fifth bankruptcy case was dismissed on January 8, 2013.

M. The docket in the State Foreclosure Case reflects that a Writ of Possession was finally issued on December 3, 2013, nearly two years after Deutsche Bank obtained title. Mr. Wells filed this case, his sixth bankruptcy case, on December 5, 2013, two days later. There is no suggestion of bankruptcy or anything else in the docket in the State Foreclosure Case reflecting the filing of this bankruptcy case. Instead, the docket reflects that emergency motions were filed in the State Foreclosure Case in an effort to stop the execution of the Writ of Possession. In this bankruptcy case, like in the last case, the Debtor falsely claims in his Schedule A that he is the owner of the 14th Ave. Home [DE# 11, p. 3].

7

N. Further evidence of misrepresentations by this Debtor are found by comparing the Schedule B of personal property he filed in this case, listing property with a total value of $3,100 [DE# 11, p 4-6], with the Allegedly Lost Property [DE# 68].[3] In his list of Allegedly Lost Property, the Debtor attaches invoices for a vast array of electronics and other goods. The first two invoices alone total $48,422.85 and $64,007.40. None of these items, which are purportedly items wrongfully removed from the 14th Ave. Home, were listed on his schedules.

## Discussion

Bankruptcy is "intended to give a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127 (2007) (citation omitted). Bankruptcy petitions filed in bad faith can be dismissed pursuant to 11 U.S.C. §707(b)(3)(A). *In re Ricci*, 456 B.R. 89, 105 (Bankr. M.D. Fla. 2009). While bad faith is not defined in the Bankruptcy Code, "[t]he common thread running through all of the indicia of bad faith is improper intent. A debtor, for bad faith to exist, must have purposefully acted and such action [must have been] motivated by an improper purpose." *Id.*

---

[3] The Debtor amended schedule B to include $3,750 of personal property [DE #47].

8

    The Court's findings in this Order are all based on matters
of record.   Now that the Court has taken the time to conduct
this extensive review, there is only one inescapable conclusion:
this Debtor has abused the bankruptcy process and, along with
others, has caused substantial delay and cost to Deutsche Bank
in its six year effort to complete its foreclosure.   This is the
Debtor's sixth bankruptcy case, and each of the last five were
filed to either stop the foreclosure sale or try to stop a
lawful eviction by the bank after the foreclosure sale finally
took place and the bank obtained title.   In  short,  this
bankruptcy case has been filed in bad faith.   As such, the Court
finds that the Motion for Sanctions should be denied and that a
hearing should be scheduled at which the Debtor must appear and
show cause why this case should not be dismissed with prejudice
for 2 years.   Therefore, it is

    Based upon the foregoing, it is –

    **ORDERED** as follows:

    1.   The Debtor shall appear in person before this Court on
**September 8, 2014 at 12:00 p.m. (noon)**, at the U.S. Bankruptcy
Court, 51 S.W. First Avenue, Courtroom 1406, Miami, FL   33130,
to show cause why this case should not be dismissed with
prejudice for 2 years. The Court will delay the start of this

hearing if the 341 meeting of creditors currently scheduled for
September 8, 2014 at 11:30 a.m. has not concluded by noon.

    2.    The Motion for Sanctions is denied with prejudice.

###

COPIES TO:

Mack L. Wells
15020 S. River Dr.
Miami, Florida 33167

Soneet Kapila, Trustee.

AUST

EX 1+1B11

CFN 2014R0147196
OR Bk 29046 Pgs 3661 - 3662; (2pgs)
RECORDED 02/27/2014 11:23:35
DEED DOC TAX 0.60
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

When recorded return to: _____

# Quitclaim Deed:

THIS QUITCLAIM DEED, executed this ___10th___ day of ___January___, 2009.

by first party, Grantor, ___Larry Williams___

whose post office address is ___14500 NW 14th Ave. Miami Fl. 33167___

to second party, Grantee, ___Maurice Summathe, Mack L. Wells___

whose post office address is ___14500 NW 14th Ave. Miami Fl. 33167___

WITNESSETH, That the said first party, for good consideration and for the sum of _____
_____ ___Ten___ Dollars ($ _10.00_ )

paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second party forever, all the right, title, interest and claim which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of ___Miami Dade___, State of ___Florida___ to wit: _____

Full Legal Description/Folio: 30-2123-000-0108

2352 60 AC BEG 25FtW & 450Fts OF NE Corner OF
NW 1/4 oF SW 1/4 Th S100Ft W261 45Ft Th N 23
Deg 11 min 57 Sec E108 11139Ft tH E 219 K1Ft to PoB
Lot Size IRREgular OR 16506'-46690994 3
Loc 21411 -4977 D62003 4

Page 1
www.socrates.com

© 2004, Socrates Media, LLC
LF299MA • Rev. 04/04

01/23/2009.

Ex H1 B1 7

CFN  2012R0628639
OR Bk 28258 Pgs 0968 - 969; (2pgs)
RECORDED 09/05/2012 12:50:34
DEED DOC TAX 241.20
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

DEUTSCHE BANK NATL TR CO (TR)
Plaintiff(s) / Petitioner(s)

VS.

WILLIAMS, LEROY , et al.
Defendant(s) / Respondents(s)

**GENERAL JURISDICTION DIVISION**

| | |
|---|---|
| Case No: | 07023371CA01 |
| Section: | 22 |
| Doc Stamps: | $241.20 |
| Surtax: | $0.00 |
| Consideration: | $40,200.00 |

## CERTIFICATE OF TITLE

The undersigned clerk of the court certifies that a Certificate of Sale was executed and filed in this action on December 01, 2011, for the property described herein and that no objections to the sale have been filed within the time allowed for filing objections.

The following property in Miami-Dade County, Florida:

- SEE ATTACHMENT -

was sold to:

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF ARGENT MORTGAGE SECURITIES, INC. ASSET BACKED PASS THROUGH CERTIFICATES, SERIES 2005-W5 UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF NOVEMBER 1, 2005, WITHOUT RECOURSE
C/O AMERICAN HOME MORTGAGE
3 ADA
IRVINE , CA, 92618

WITNESS my hand and the seal of this court on  August 29, 2012 .

Harvey Ruvin, Clerk of Courts
Miami-Dade County, Florida

Rev. 10/5/2009

1